Our next case is Pugsley v. Stockstead Hall. For the appellant, Mr. Unrath, and for the appellee, Mr. Reichstek. Good morning, Your Honor. My name is Craig Unrath. I represent the intervener's appellants. Judge Cook, I'd like to welcome you back. It's good to see you. Thank you for having me. I'd like to start by saying that this case has two components, an easy part and a very difficult part. The easy part is this. We have a witness who heard Yvonne Tucker say to her attorney, I want you to deed the farm to the girls. What did she mean by that? Did she mean pass this property onto them right away or did she suggest, mean that it should be passed under the will? Both attorneys in open court said that they couldn't say that this represents a genuine issue of material fact. Nevertheless, the court under judgment found that there was no present intent to have this property passed. And for that reason alone, I believe that this case must be remanded to resolve this issue of fact. I think it should also be pointed out that the complaint alleges that Yvonne Tucker told him, told her attorney, to dissolve a joint tenancy. Part of that property was held under joint tenancy. According to the complaint, she asked that it be dissolved. You can't do that under a will. So not only do we have a genuine issue of material fact, but if the complaint, the allegations in the complaint are viewed in the light most favorable to the plaintiff, it appears that she did have a present intent to transfer that property. Now, upon remand, if the trier of fact determines that she did in fact want that property to pass immediately, well at that point, the two daughters have been deprived of a present date interest in the property. Their injury is complete from that point on. Accordingly, the six-month statute of repose cannot possibly apply because the injury did not occur upon the death of their mother. It occurred when the attorney failed to dissolve the joint tenancy. Six-month statute of repose? Yes. Yes, which I find astounding. I'm normally a defense attorney. In most cases, statutes of repose are my friends. But a six-month statute of repose, it shocks the conscience of the fact that I wouldn't describe subsection D as a statute of repose. I'd describe it as an exception to the statute of limitations in B and the statute of repose in C. I think I struggled with the very same issue when I first got involved with this case. I went back and forth and back and forth. And it suddenly occurred to me that after reviewing the case law, they were treating it as a statute of repose. And I said, well, that's what's causing all this confusion. Sometimes it extends the period. Sometimes it reduces the period. In this case, the statute of repose is six months. It's not subject to the discovery rule. And in the Wackrow case, the Illinois Supreme Court addressed this. They said, we understand that many claims may be extinguished before they are even discovered or even become discoverable. They said, but we feel that this is usually the exception, not the rule. That's how you deal with a statute of repose. The statute itself is horribly flawed. Every statute of repose I've been able to find is always tied to the act or omission. Here, it's tied to the date of injury, which is the province of a statute of limitations and the discovery rule. So I look at this statute and it's horribly flawed. Now, if this case is remanded to resolve the issue of fact as to whether Yvonne Haynes intended that the property pass immediately, this will be sent to the trier of fact. What happens if the trier of fact says no, there was no present intent, that she actually did intend this property pass through the will? Now we have to actually grapple with this subsection D. And we're dealing with a situation where we have statutory language that's number one is framed in the negative. It says, where an injury does not occur until the death. Right off the bat, we're dealing with a confusing statute. But it's worse than that. In my entire career, I never thought I would find myself researching the word until. And as it turns out, Westlaw will not allow us to do a search on that. But I did find a few examples of it. It's just a poor way of drafting the statute. Does it include injuries that occur only upon the death of Yvonne Tucker? Or does it encompass injuries that applied on her death or perhaps occurred afterwards? There is some confusion on that point. Now that confusion may have been resolved by the Illinois Supreme Court in WACRO. The WACRO court said, the lone inquiry in determining whether this subsection applies, this is a quote, is simply whether the injury caused by the malpractice occurred upon the death of the client. So that would seem to indicate that the subsection D applies only where the injury occurred right upon the death of Yvonne Tucker. Now, what happened upon, what injury occurred upon Yvonne Tucker's death? I would submit that there were none. At that time, upon her death, she had a perfectly good will. The property was going to be bequeathed to her daughters, which was exactly what she wanted. It wasn't until some months later that her spouse renounced the will. And now we have an injury. It's not an injury that had to happen. Might have happened, might not have. He didn't have to renounce that will. So the question becomes... Well, when she talked to Attorney Truith, this is like a month or so before her death, a couple months, did she recognize that there was a problem with her husband? And she wanted the property to go to her daughters? And was that why she was talking to the attorney? If so, he should have anticipated renunciation might be a problem. And he could have cured that with an immediate deed. And he could have done that right up until the moment of her death. So under that analysis, doesn't subsection D apply? No, Your Honor, I don't think it does. And first off, we have no evidence that he ever intended to cure this defect that apparently nobody recognized at the time. The other thing is this, is that if the trial of fact determines that Yvonne Tucker wanted this property to pass immediately, deed, the farm to the girls, that's pretty specific language. They were He made no attempt to do what his client had instructed him to do. Well, if she wanted it to pass to the girls on her death, then there was no harm, certainly, as he walked out of the room. And again, but if she expected the farm to be deeded to the girls that day, then there we have to get this resolved. Personally, I believe that given the fact that taking the allegations and the complaint is true, he was instructed to dissolve a joint tenancy. That can't be done through a will. You combine that with a witness who testified that he said, she said, deed the farm to the girls, that doesn't even suggest do this later, do this upon my death. I think it weighs heavily in favor of the conclusion that she intended this property to pass immediately. But again, that's not before us right now. The trial court, I believe, with respect to the trial court, overreached and made that decision for us. The trial court said, I see no indication that she wanted to pass this property immediately. That's what I'm going to rule on. Given the fact that both attorneys said that they weren't sure what she meant, I find that somewhat remarkable. If the property was intended to pass immediately, they should have been able to occupy that. They were entitled to rents. They were certainly also entitled to any taxes that would be owed on that property. As of the day that she said, get it done now, I believe that the moment he walked out of that conference, I believe it was March 2007, without any intent, apparent intent, I should argue to my brief, the fact that someone can later cure a breach does not change the fact that a breach actually occurred. If the injury occurred at all, it occurred either prior to her death or months after her death. It didn't happen upon her death. And that's the way the WAC role has defined, interpreted, subsection of the act. Like you say, with regard to the joint tenancy properties, that couldn't be cured by the will. He had to write, he had to draw a deed. But that could have been done at any time up until her death. That's the same as WAC role. In WAC role, the testator bequeathed property that he didn't own outright. And nothing could change that upon his death. It was done. It could have been, he prepared an amendment to a living trust. But unfortunately the property was not owned by the fellow, the trust's store. Right. And WAC role says you could have changed that at any time up until the death. Why isn't it the same here? It's not the same because they were deprived of a present day interest in that property. In WAC role, the intent was clear. This will pass upon my death. Here we have a genuine issue of material fact as to when Yvonne Tucker wanted that property to pass. But if she wanted it to pass, not immediately, but on her death, he could have prepared the deed at any time up until the date she died. The same as Snyder. And we have a, we can speculate on that, but the fact remains that the daughters certainly believed that they owned that property. They were under the... How can they believe that when he says the will will take care of it? He is saying that whatever is going to happen is going to happen at the time of your death. Again, we have offsetting evidence suggesting that she was told to dissolve a joint tenancy which cannot possibly be done through the will. Your Honor, I think that we cannot stand in the shoes of the trier of fact. We can't make this decision. We can't determine whether or not the, what the intent was in this case. Okay, because you concede if she intended that this happen after her death or upon her death, that subsection D applies. No. No, I don't. Because the, it comes down to this. Put yourself in the shoes of an attorney for Lisa Pugsley and Lori Dunn. They've hired you and given you one order. Your mission is to ensure that they actually get this property. Yvonne Tucker dies, she passes away, they look at the will, it says here you're going to get the property. Has there been an injury? Can I sue Attorney Tuwith for any malpractice? Well, not yet. Because as far as we can tell, the land is going to go to you. Months later, Attorney Tuwith, or the spouse, renounces the will. Now, for the very first time, we have injury. You're conflating the two. It seems to me there's a different rule with the property that's owned in fee simple and the property that's owned in joint tenancy. The will can take care of the property that's owned in fee, maybe, absent renunciation. But the property that's owned in joint tenancy has to have a deed. And there could have been a deed here up until the time of her death. There could have been, but there's no evidence that any deed was ever going to be prepared.  The question is, when did the injury occur? And Snyder and Wackrow seem to say it occurred at the time of her death. I think that is the key issue here. When did the injury occur? And that is a genuine issue of material fact in this case. We have to determine what Yvonne Tucker's intent was if we're going to determine that. Anything else supplants the prior fact. We submit that there was no injury upon her death. Upon her death, the will appeared to be just fine. No injury as to the joint tenancies? Joint tenancies is different. You're right. I stand corrected. It was the renunciation of the will that created the injury in the property owned in fee simple. My point is this, Your Honor, is that Subsection D is simply incapable of handling the situation. As I said, it's a poorly drafted statute. It just simply does not encompass the potential for a renunciation of a will. I would also like to submit that a statute of repose cannot be applied, cannot be triggered on an eventuality. It cannot be conditional. We can't say a statute of repose begins to run when we're not sure if the injury has even occurred. And in this case, the injury did not occur until long after her death when her husband renounced the will. I think it defies all sense of justice to suggest that, for starters, a six-month statute of repose, but any statute of repose, could possibly be triggered when no injury has occurred. That's a solution. A statute of limitations is based on the injured party's knowing about their injury. It starts from knowledge. But a statute of repose is designed to make a concrete cutoff. And so it starts with the act. So even if the party doesn't know they've been injured, six years go by and it's over. That's correct, Your Honor. And unfortunately, that's the case with the six-month statute of repose. It's that, as earlier you had said, there's some confusion as to whether this is a statute of repose or a period of limitations. It's treated as a repose period. And the notion that a six-month repose period could go into effect not only before an injury is discovered, but this is the key part, before an injury is even discoverable. They had no idea that that did not occur in this case. But technically, you have six months to file a claim against the estate, seven months to renounce. The time period for filing a claim against the estate could expire and you would not even know that you were injured until after that time period had expired. Wackrow says that that's the exception. I think that these things usually do not occur. In a case like this, if you are representing Lisa Pugsley and Lori Dunn and your job is to ensure that they get their land, you have no choice but upon the death of Yvonne Tucker to immediately file a malpractice action against Tuath on the chance that the will would be renounced. And that makes no sense. You can't file a suit where there's been no injury. To conclude my argument, I'd just like to reemphasize that where both parties suggest that there is an issue of fact as to whether Yvonne Tucker had a present intent to pass the property, the case must be remanded. And if it is remanded upon remand, there is only one reasonable solution or outcome of this case. The injury either occurred prior to Yvonne Tucker's death or many months afterward when her husband renounced. Thank you very much. Thank you. Mr. Reifstead? Thank you, Your Honor. May it please the Court of Counsel. Kenneth Reifstead here for the defendant, Mr. Tuath. Much of the argument that we just heard was focused on the fact that, well, what is presumed to be the fact by my opponent, that the statute that is at issue here that was interpreted by the court as applying subsection D is a harsh statute. And indeed it is. Many statutes of limitation and repose are harsh in nature. The Illinois Supreme Court noted as much in the case that both parties have cited in the court brought up today, that in some instances the cause of action may be extinguished before it is even accrued. The will in this case or in such cases when the will has been admitted to probate or letters of office issued, the legislature intended to terminate the possibility of liability after a defined period of time, whether a plaintiff's cause of action is accrued. So the Illinois Supreme Court has spoken on the issue as to whether this statute or this provision of the statute is harsh and can result in what appears, what's been couched as an unfortunate result. I agree with counsel that it seems to me to be a simple issue in that it's a plain issue that's before the court and that is when did the injury occur. And the dates are fully set forth in the brief. In March of 07, Yvonne Hayes met with her attorney to convey farmland to her daughters. The term was alleged, deed to farm to the girls. In May of that same year, Ms. Hayes died. The will was admitted to probate in June and Mr. Hayes renounced the will in August. And the instant action wasn't filed until February of 2009. We submit that the trial court got this issue right, that the cause of action, the injury occurred upon the death of Yvonne Hayes. As the court had pointed out, we agree with the proposition that any defect that may or may not have occurred, any interpretation of what was meant to be done, a deed to farm to the girls could have been accomplished up until the time of Yvonne Hayes' death. And as we've cited WACRO for the proposition that... You know, under that argument, suppose Tuath had talked to this lady 20 years before she died. Then, according to your argument, 20 years later, at the time of her death, Tuath could have been sued for not preparing the deeds? If the argument is, Your Honor, that the daughters were deprived of a present possessory interest, then after some amount of time... Now, I would disagree that the injury occurred the moment he walked out the door as was couched. That would presume that counsel didn't have time to go back to his office and prepare. I'm saying assume that she wanted the daughters to have the property after she died. And Tuath says the will will take care of it. Well, the will doesn't take care of it with joint tenancy. You have to have a deed. But she could have signed a deed right up until the time of her death. So 20 years later, Tuath could be sued for his actions 20 years earlier? Well, in that instance, I would presume if the cause of action occurred on the death in that instance, the injury occurred on the death, presumably it could under that provision. I haven't thought about the possibilities of how long this could extend the statute of limitation. I know that the court had noted in deciding whether this was a statute of repose or a statute of limitation in opposing counsel's argument on couching it as an exception to the statute of repose, as an exception to the statute of limitations, and it can shorten or it can lengthen the statute of limitations. And I don't have case support. And to be honest, Your Honor, I haven't looked at cases where it potentially extends. But I would agree with the assertion that subsection D is an exception to the statute of limitations and the statute of repose. It's a very, very definite statement. If this occurs and this injury occurs, then you've got six months to file your claim. Whether that be harsh or not, that's the way it is. Whether you know that your cause of action has accrued, that's the way it is. So the injury, if any, here occurred, whether it was to be passed upon for death, whether it was meant to be a presence, do it now, it doesn't matter. Because any of those possibilities, any of those contingencies could have been cured up until the time of her death. And it was at that time that the fate was sealed, that nothing was going to happen after that point because it just wasn't possible to do whatever her wishes were at that point. And the court, I note, had mentioned the Snyder case, also an Illinois Supreme Court case. That case came out after the briefing of this case. I don't think it changes the game at all here. In fact, I think that it reaffirms our position as to when the cause of action accrued. Do you agree there's a factual issue that has to be decided? I do not. I do not. I think that if she wanted a deed prepared immediately, then subsection D doesn't apply, does it? I believe that it would in this instance, Your Honor. If no other reason but for the timing of what happened and when it happened. I guess there's no bright line test on when an attorney, it's reasonable for him to act. I don't think it's reasonable that he act right there on the spot and prepare the deed and hand it to her right there. If she had said to him, I want you to prepare a deed right now giving this property to my daughters, and he said the will will take care of it. Well, the will didn't take care of it. I mean, the daughters should have had a present interest immediately. And a present interest that could have been cured? It doesn't change the fact that even if that was what the attorney's statement was, it doesn't change the fact that that problem still could have been cured by someone up until the time of her death, whether by Mr. Tuath or someone else. But the daughters would not have had the property in the meantime. Then the question would become whether, I guess the question there then is, when is the reasonable time for any attorney to act upon those instructions? Does it become then the intent of the attorney and what was going on in his mind, or does it become the intent of the, in this case, the decedent and what she wanted to have done, and how long it would take to accomplish that? I think there's a reasonableness here that has to be presumed that the minute you walk out the door, the injury didn't occur that day. In any instance, it would take time to figure out what needed to be done and what was reasonable. Well, under those situations, you have a defense of impossibility. He's meeting with the lady at her home. He says, I want to give the ground to the girls. She says, okay. He's got to go to his office, and within a day or so, prepare some deeds and get him back out. If he walks out the door and the lady dies before he can have a chance to get to his office, that's a whole different situation. So we can't presume that this is an unreasonable expectation just because it's going to take some time. I still don't think it matters. I still think that, and we still assert that subsection D would apply, and that this job could have been accomplished, and she could have had a will revised, or deeds prepared, a joint tenancy severed, whatever needed to be done up until the time of her death in May, and that once the will was admitted into probate, subsection D started the clock ticking. Subsection D makes sense when you're expanding the statute of limitations, but what sense does it make to apply it in this case to shorten the statute of limitations to almost nothing? Well, I can't argue to the sense of the legislature here in the application. I think Wackrow and the Illinois Supreme Court spoke to that exact scenario, to where it can cut you off so fast that you haven't even ascertained that there's a cause of action. And I'm not certain that subsection D was in effect at the time of this action. I'm not sure that it's even the law anymore. I didn't pull open my most recent rules of civil procedure, but I'm not sure subsection D is even there. But I don't know that's for me to decide. That has to be addressed by the legislature in cases like Wackrow and Snyder as to what ought to have been done, and the harsh results that can come from any statute. And those have to be cured by the legislature. And that possibility has been recognized, and I don't think it is an issue here. I submit it's not an issue here that it shorted it so much that it provided a harsh result. Shouldn't statutes be interpreted in a reasonable manner? They have to be interpreted in a reasonable manner, but they also have to be interpreted as written if the language is plain, Your Honor. Now you aren't saying this language is plain. Everybody's been saying how confusing and ambiguous this language is. Well, it cuts it off as soon as the injury occurs, so if you can ascertain when the injury occurred, I think the statute is easily applied. Well, what, I mean, reasonable time. What if a year lapses, and this is farm ground, and you've got substantial income coming from crops, and you don't get it because it isn't your land? Your Honor, yes, the plaintiffs would have to, maybe they couldn't just sit back on their rights, but there's something wrong with thinking that the present interest in the property is so tenuous that it can be cured at a later time. I mean, back to law school, we're supposed to think about land, it's unique, and these words are spoken, or at least there's, maybe there's a question of material fact about what the words mean or whether they were spoken. Deed the farm to the girls. Deed the land to the girls. If I'm the girl, if I'm one of the women, I assume it's my land, and if it's not my land, it's going to be my land in the very near future. I mean, I can close on a house I buy in less than 30 days. So I don't understand why that isn't some reasonable time after he was instructed and he failed to prepare the deed and accomplish that, why that isn't an injury. Well, the... That occurred before her death. Well, and I think in that instance, the fact that she was, Yvonne was still alive, then that would be her action, not the girl's action at that point. Well, but that isn't, I mean... Well, then it would become a measure of damages argument for the girls when they had a cause of action and so long as it was timely filed and we submit that it wasn't. Well, I even thought about third-party beneficiaries and stuff like that. I mean, who's supposed to reap the benefit of this action? They're there, too, aren't they? Well, after the, Yvonne Hayes had died and we submit after it became impossible to effectuate the wishes of Yvonne Hayes, then if an action was timely filed, the girls could very well have an action to say part of our damages on not being able to possess this right away was the fact that we didn't have income off the farm or those types of things. But there's nothing in this rule that says the amount of damages that you might have been able to recover is so small that we're going to pretend like it wasn't an injury. But I'm not suggesting that it was. I'm just saying that up until the... There was no suit filed by Yvonne Hayes here for Tula not to file. And so any injury that occurred had to occur upon her death when this no longer became possible. I think that comports with the Illinois Supreme Court's laws in both Wackrow and Snyder. We would respectfully request that the judgment of the trial court be affirmed. And I thank you for your time, Your Honors. Thank you. Rebuttal. Thank you, Your Honors. As to Wackrow, one point we raised in our brief is that upon the death of the testator in Wackrow, the injury was complete. It was done. Whether anything had changed or whether it was capable of being changed or not, here in this case there was no injury at all until months after her death when the spousal renunciation occurred. What about Judge Knax's question? The daughters lost the present income from the property. Well, that comports with the arguments we've raised in our brief. We've argued that the injury occurred either before or after her death, but not upon her death. And he raises a very good point. Yvonne Tucker may have lived for many years. Who is entitled to the rents, the profits that may come from his farmland, but also who is responsible for the liabilities, the taxes, as I mentioned earlier. So I do believe that when Attorney Tuath did not take immediate steps to deed the farm to the girls, that he breached his contract. Now, that is the injury here. The result of that injury is that they were deprived of the property upon the spousal renunciation. But the injury itself is breach of contract. Now, the ability to cure a breach, does that mean a breach never occurred? And I respectfully submit that it does not. I think that when you breach a contract, the action is complete. The fact that months or years later you can cure that breach is of no moment. Justice Cooke, you had also mentioned that the subsection D may shorten or lengthen the limitations period. And I haven't entirely thought this through, but as I see it, I don't see how it can possibly lengthen the two-year limitations period. You have a work will as well. Well, let me try to explain it. Look at the Snyder case. The quit-claim deed was in 1997. The property, the estate, the husband died in 2007. So you're talking about a 10-year period. And how does the Supreme Court get around that? By describing the time the injury occurred, that there was an injury which occurred earlier. But according to the Supreme Court in Snyder, subsection D would have allowed the claim if there had not been a present injury at the time the deed was prepared. And that is what we're dealing with right now. There was no present injury. And actually, it's the flip of that, because there was no deed prepared in our case. In Snyder, there was a deed prepared. I think in most cases, you have approximately six months to file a claim against the estate. And at that point, that's the time period that you're dealing with on the subsection D. In almost every case, you're going to be dealing with a severely shortened limitations period, as I see it. And what also disturbs me is this, is that the renunciation of a will can take place seven months after the will is admitted to probate. But there's an exception to that, too. If somebody files a claim against the will, you can wait until that claim is fully resolved and then renounce. Accordingly, the renunciation doesn't necessarily even take place seven months or eight months. It could take five, ten years. I think in the end, there are two main points that I want to urge the Court to consider. First, we need to determine when this date of injury occurred, and that can only be resolved by determining what Yvonne Tucker intended at that March 7th meeting. The second point is this, is that if she did intend to pass under the will, if that's what the trial rule of fact determines, we submit that the renunciation did not occur, the injury did not occur until well after her death, and that a statute of repose cannot be applied toward a prospective or contingent injury. Thank you very much. Thank you. Thank you, counsel. We'll take this matter under advisement.